UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK MINTO,

Plaintiff,

VS.

CONNECTICUT STATE POLICE; MAJOR SARAH BRUSO; SERGEANT CLAUDIA TINO-TOMASSETTI; SERGEANT MICHAEL P. KOSTRZEWA; AND TROOPER MATTHEW HERZ

CIVIL ACTION NO.

3:14-CV-747 (VLB)

JURY DEMAND

## COMPLAINT

I. **INTRODUCTION**

1. This action is brought on behalf of Plaintiff Mark Minto, for money damages and other relief to redress the deprivation of rights secured by law. The plaintiff alleges deprivation to liberty, equal protection, and due process pursuant to the Fourth Amendment of the United States Constitution, also enforceable under 42 U.S.C. § 1983, State of Connecticut Constitution, and state common law claims.

II. **JURISDICTION**

2. The United States District Court for the District of Connecticut has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because it asserts claims under the United States Constitution and 42 U.S.C. Section 1983 of the United States Code. This Court has jurisdiction over the plaintiff's supplemental state law claims pursuant to 28 U.S.C. § 1367. Jurisdiction is specifically conferred on this

Court by 42 U.S.C § 2000e-5(f). This Court also has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57.

### III. VENUE

3. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b) because the defendants reside and/or are employed in this district and because all of the acts and omissions giving rise to the plaintiff's claim occurred in this district.

### IV. PARTIES

4. During all times material to this complaint, the plaintiff, **MARK MINTO** ("MINTO"), was a citizen of the United States, a resident of the City of East Hartford in the State of Connecticut, and was employed as a certified police officer for the Department of Mental Health and Addiction Services (DMHAS) at Connecticut Valley Hospital in Middletown, Connecticut.

5. At all relevant times the defendant, **CONNECTICUT STATE POLICE** ("CSP"), was a division of the Connecticut Department of Emergency Services and Public Protection, responsible for a broad range of public safety services, training, regulatory guidance, and scientific services, for the protection and improvement of the quality of life for the general public. As set out below, plaintiff seeks to impose liability upon the **CSP**, for damages suffered as a result of department policy and practice.

6. At all relevant times, the defendant, **SARAH BRUSO** ("BRUSO"), was a State Trooper employed by the CSP, serving as a Major for the CSP. At all times material to this complaint, defendant **BRUSO**, as a CSP Major, was employed in a position of policy-making authority for the **CSP**. At all times material herein, **BRUSO**

was acting under color of her authority as a State Trooper and as a CSP Major. She is sued in her individual capacity and official capacity.

7. At all relevant times, the defendant, **CLAUDIA TINO-TOMASSETTI** ("TINO-TOMASSETTI"), was a State Trooper employed by the CSP serving as a Sergeant responsible for supervising Troopers under her supervision. At all times material herein **TINO-TOMASSETTI** was acting under color of her authority as a State Trooper and as a CSP Sergeant. She is sued in her individual capacity and official capacity.

8. At all relevant times, the defendant, **MICHAEL P. KOSTRZEWA** ("KOSTRZEWA"), was a State Trooper employed by the CSP and serving as a Sergeant responsible for supervising Troopers under his supervision. At all times relevant to this Complaint, **KOSTRZEWA** was acting under color of his authority as a police officer and as Sergeant. He is sued in his individual capacity and official capacity.

9. At all relevant times, the defendant, **MATTHEW HERZ** ("HERZ"), was a State Trooper employed by the CSP serving in a patrol function. At all times relevant to this Complaint, **HERZ** was acting under color of his authority as a Trooper. He is sued in his individual capacity and official capacity

## V.   STATEMENT OF FACTS

10. On May 29, 2012, at approximately 4:05 p.m., the Plaintiff was driving north on Route 9 in Middletown, Connecticut. The Plaintiff was driving home after working the day shift as a Department of Mental Health and Addiction Services (DMHAS) Police Officer stationed at Connecticut Valley Hospital in Middletown,

Connecticut. The Plaintiff was still wearing his Department issued uniform and badge and operating his personal vehicle, a 2007 Nissan Quest.

11. The Plaintiff observed the vehicle in front of him, a silver Nissan Altima, begin to sporadically and repeatedly apply its brakes, commonly referred to a "brake-checking," causing him to take evasive braking maneuvers to avoid rear-ending the silver Nissan. The Plaintiff attempted to pass the vehicle on the right, but the vehicle increased its speed to keep him from passing. At this point The Plaintiff observed a young child in the rear passenger seat of the vehicle.

12. The silver Nissan Altima continued to drive in an erratic manner, increasing and decreasing speeds and pulling alongside of a box truck traveling in the right lane to prevent the Plaintiff from passing. The operator of the silver Nissan Altima then displayed the middle finger to The Plaintiff through the sunroof of her vehicle. The Plaintiff, as a sworn police officer, and based on his training and experience, believed the operator may have been under the influence of drugs and/or alcohol and decided to phone 911 to inform police of the operator's actions, which were endangering him, other motorists, and the child in the silver Nissan Altima.

13. The Plaintiff made two separate attempts to call 911 and both calls were dropped. The Plaintiff attempted a third call to 911 as the silver Nissan Altima exited Route 9 onto exit 19. The Plaintiff remained behind the silver Nissan Altima at a safe distance to relay its location to the 911 operator as the third call went through.

14. The Plaintiff then followed the silver Nissan Altima into a residential condominium complex where it parked. The Plaintiff parked his vehicle in an adjacent parking area a short distance away.

15. The Plaintiff exited his vehicle to relay the license plate information and ascertain his exact location when he was approached by the irate operator, Miss Jennifer Gruszczak, who questioned him as to why he was following her so closely.

16. The Plaintiff continued to give the 911 operator the registration plate and attempted to clarify his location. The 911 operator asked him if he wanted to file a complaint against the operator of the vehicle, to which he replies "yes."

17. The Plaintiff was instructed to get back in his car, not to talk to the other vehicle's operator, and await police arrival, to which Plaintiff complied. At that point, Miss Gruszczak returned to her vehicle and drove away.

18. The Plaintiff waited in his vehicle for police to arrive as instructed. Miss Gruszczak returned a short time later as two Cromwell police officers arrived.

19. A short time later, two Connecticut State Troopers arrived as the incident occurred on a State highway. The State Troopers summoned the Plaintiff's supervisor, Sergeant John Rumley, to respond to the scene, which he did.

20. During the course of their investigation, the Troopers took written statements from both the Plaintiff and Miss Gruszczak. Trooper Herz (#1248) issued a Misdemeanor Summons to the Plaintiff for violating Connecticut General Statutes § 14-240, Vehicles to be Driven a Reasonable Distance Apart, § 14-240a, Vehicles to be Driven a Reasonable Distance Apart; Intent to Harass or Intimidate, § 53a-130, Criminal Impersonation of a Police Officer, and § 53a-181, Breach of the peace in the second degree.

21. Trooper Herz refused to charge Miss Gruszczak in this incident, despite the Plaintiff's detailed accounting of the reckless manner in which she operated her vehicle, all the while with a young child on board.

22. Trooper Herz asked the Plaintiff if he had any firearms in his possession, to which the Plaintiff replied that he had a licensed firearm in a case in the rear of his vehicle. Herz then seized the Plaintiff's firearm from the rear of his vehicle and tagged it as evidence in this case.

23. Sergeant Tino-Tomessette was the supervisor on duty and was involved in Trooper Herz's decision to arrest the Claimant. Sergeant Tino-Tomessette did not respond to the scene, did not review the statements, and received all of her information from Trooper Herz.

24. Sergeant Tino-Tomessette contacted the States Attorney's Office in Middletown and was told that, if the officers believed probable cause existed, to submit an arrest warrant application to the court for approval by a Judge. Sergeant Tino-Tomessette and Trooper Herz decided against the recommendation and arrested the Claimant on scene.

25. Trooper Herz then prepared an incident report, which was provided to Sergeant Kostrzewa for approval. The incident report did not contain probable cause for the plaintiff's arrest.

26. Sergeant Kostrzewa approved the report submitted by Trooper Herz even though the report did not contain sufficient probable cause to support the arrest of the plaintiff, and without questioning why the other operator was not arrested.

27. Subsequently, on May 30, 2012, the Connecticut State Police sent notice to the Claimant that, as a result of his arrest, they were revoking his State of Connecticut Pistol Permit and his Special Police Powers granted under Connecticut General Statutes § 29-18. The Claimant was instructed to surrender his pistol permit and his police identification card to the Special Licensing and Firearms Unit of the State Police, to which he promptly complied.

28. Based on the Defendants' actions, the Plaintiff was put on unpaid leave from Connecticut Valley Hospital immediately following the incident, and has remained on unpaid leave since that time. The defendant did not provide a due process hearing prior to revoking his authority to be a police Officer.

29. On May 9, 2013, the Claimant attended an Appeal Hearing for his State of Connecticut Pistol Permit before the Board of Firearms Permit Examiners. Testimony was given by the Plaintiff and by Trooper Herz. The Board concluded that the revocation of his permit by Trooper Herz was improper and the seizure of his firearm was without authority. The Board returned the Claimant's permit to carry a concealed weapon.

VI. **CAUSES OF ACTIONS**

### FIRST CAUSE OF ACTION

*False Arrest in Violation of the Fourth and Fourteenth Amendment of the United States Constitution, and 42 U.S.C. §§ 1983, et. seq.(All Defendants)*

1-28. Paragraphs 1 through 27 are incorporated herein by reference.

30. In arresting the Plaintiff without establishing probable cause, the defendants Hertz violated the Fourth and Fourteenth Amendments to the United States Constitution.

7

31. Trooper Herz charged the Plaintiff with Connecticut General Statutes § 53a-130, Criminal Impersonation; a statute that states in subsection 3 that the violation occurs when a person pretends to be a public servant other than a sworn member of an organized local police department or the Division of State Police within the Department of Emergency Services and Public Protection, or wears or displays without authority any uniform, badge or shield by which such public servant is lawfully distinguished, with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense.

32. The Plaintiff is a sworn police officer with the Department of Mental Health and Addiction Services, employed in such capacity at Connecticut Valley Hospital. He holds his certification with the Police Officers Standards and Training Council (POST), and displayed to Trooper Herz his Special Police Identification Card #1078. He was dressed in his Department issued uniform, wearing his Department issued badge. He had just left his place of employment where he wears this uniform in the performance of his prescribed duties as a Police Officer.

33. Trooper Herz charged the Plaintiff with Connecticut General Statutes Section 53a-181, Breach of Peace in the Second Degree. To violate this statute a person must, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such other person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene

language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do.

34. Trooper Herz failed to include any facts or circumstances in his report that support probable cause to arrest the Plaintiff for violating this statute. The defendants are liable for the plaintiff's unlawful arrest.

35. Trooper Herz charged the Plaintiff with Connecticut General Statutes Section 14-240, Vehicles to be driven a reasonable distance apart, and Section 14-240a, Vehicles to be driven a reasonable distance apart; Intent to harass or intimidate.

36. To violate these statutes a person must drive a motor vehicle and follow another vehicle more closely than is reasonable and prudent, having regard for the speed of such vehicles, the traffic upon and the condition of the highway and weather conditions. Section 14-240a adds that the individual violate the provisions of Section 14-240 with the intent to harass or intimidate the operator of the preceding motor vehicle.

37. Trooper Herz failed to include any facts or circumstances in his report that support probable cause to arrest the Plaintiff for violating this statute. The defendants are liable for the plaintiff's unlawful arrest.

38. Defendant Herz arrested Plaintiff under the supervision and authority of Defendants Tino-Tomassetti and Kostrzewa, in their capacity as supervisors of the Connecticut State Police. That is, Tino-Tomassetti authorized the onsite arrest of the Plaintiff, and Kostrezewa approved the incident report, both with knowledge that probable cause did not exist.

39. By reason of the denial of the Plaintiff's Fourth and Fourteenth Amendment Rights against unlawful seizure, the Plaintiff has lost wages and other compensation, has lost his position as a police officer with the Department of Mental Health and Addiction Services at the Connecticut Valley Hospital, and has suffered embarrassment, humiliation, mental anguish, and loss of self-esteem.

## SECOND CAUSE OF ACTION

*(Unlawful Seizure of Firearm in violation of the Fourth Amendment of the United States Constitution, 42 U.S.C. §1983 as to all Defendants)*

40. Paragraphs 1 through 38 are incorporated herein by reference.

41. Trooper Herz coerced the Plaintiff to sign a Consent to Search and Examine Evidence form (DPS-167-C) under threat and duress. Trooper Herz then seized the Plaintiff's firearm with no legal basis for the seizure in violation of Fourth Amendment to the United States Constitution. The Connecticut State Police then refused to return the firearm to the Plaintiff, or a suitable designee of the Plaintiff.

42. Trooper Herz had no legal reason to seize the Plaintiff's firearm. Trooper Herz indicated in his report that he secured the weapon in his cruiser while the investigation was on-going for safety reasons. He then stated in the next sentence that the Plaintiff had a valid Connecticut pistol permit and the listed firearm was registered to him. Trooper Herz later wrote that the Plaintiff's firearm was transported back to Troop H where it was entered into evidence. Trooper Herz completed a JDCR-18 and tagged The Plaintiff's firearm as evidence under the incident case number.

43. Trooper Herz gave no indication in his report as to why the firearm was seized, but listed the firearm on the first page of the report as Code 6, indicating it was, in fact seized. The charges filed against the Plaintiff have no connection to firearms nor

do they establish grounds for seizing a firearm. The charges do not disqualify him from possessing a firearm as outlined in Connecticut General Statutes § 29-28.

44. Trooper Herz unlawfully seized Plaintiff's firearm under the supervision and authority of Defendants Tino-Tomassetti and Kostrzewa, in their capacity as Supervisors in the Connecticut State Police.

45. The Plaintiff made two attempts to retrieve his firearm from Troop H in person, but was denied.

46. The Connecticut State Police have no legal justification for refusing to relinquish the Plaintiff's firearm, and have failed to even attempt to explain on what grounds they are holding the firearm.

47. As a result of the Defendants violations of the Plaintiff's Fourth Amendment rights against unlawful seizure, the Plaintiff has suffered damages specific to the loss of his property, privileges and liberty interests.

### THIRD CAUSE OF ACTION

*(Unlawful Seizure of Connecticut Pistol Permit in violation of the Fourth and Fourteenth Amendments of the Constitution and 42 U.S.C. §§ 1983, et. seq.( as to all Defendants)*

48. Paragraphs 1 through 45 are incorporated herein by reference.

49. On May 30, 2012, the Connecticut State Police, Special Licensing and Firearms Unit, the Plaintiff's State of Connecticut pistol permit with no legal justification.

50. On May 30, 2012, Connecticut State Police Detective Vincent Imbimbo drafted a letter to the Plaintiff indicating that his "Permit to Carry Pistols and Revolvers" was revoked effective immediately. It cites that the reason for the revocation was his involvement in an incident investigated by Troop H under case number 12-00309051.

51. Section 29-32 of the Connecticut General Statutes indicates that any state permit or temporary state permit for the carrying of any pistol or revolver may be revoked by the Commissioner of Emergency Services and Public Protection for cause and shall be revoked by said commissioner upon conviction of the holder of such permit of a felony or of any misdemeanor specified in subsection (b) of section 29-28 or upon the occurrence of any event which would have disqualified the holder from being issued the state permit or temporary- state permit pursuant to subsection (b) of section 29-28.

52. Section 29-28 subsection (b) stipulates in relevant part that the person must be convicted of a felony or of a violation of subsection (c) of section 21a-279 or section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d, (3) has been convicted as delinquent for the commission of a serious juvenile offense, as defined in section 46b-120, (4) has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect pursuant to section 53a-13, (5) has been confined in a hospital for persons with psychiatric disabilities, as defined in section 17a-495, within the preceding twelve months by order of a probate court, (6) is subject to a restraining or protective order issued by a court in a case involving the use, attempted use or threatened use of physical force against another person, (7) is subject to a firearms seizure order issued pursuant to subsection (d) of section 29-38c after notice and hearing, (8) is prohibited from shipping, transporting, possessing or receiving a firearm pursuant to 18 USC 922(g)(4), (9) is an alien illegally or unlawfully in the United States, or (10) is less than twenty-one years of age.

53. Sections 29-32 and 29-28 are the legal basis for the revocation of a Connecticut permit to carry pistols and revolvers. The Plaintiff was not charged, let alone convicted, of any of the crimes specifically indicated in the relevant statutes. The Plaintiff did not violate any sections of the relevant statutes to justify the revocation of his Connecticut permit to carry pistols and revolvers.

54. The Connecticut State Police revoked the Plaintiff's permit to carry pistols and revolvers without cause and in violation of his Fourth Amendment's protection against unlawful seizures.

55. As a result of the Defendants violations of the Plaintiff's Fourth Amendment rights against unlawful seizure, the Plaintiff has suffered damages specific to the loss of his property, privileges and liberty interests.

## FOURTH CAUSE OF ACTION

*(Denial of Equal Protection Violation of the Fourteen Amendment of the United States Constitution 42 U.S.C., §1983 as to all Defendants)*

56. Paragraphs 1 through 37 are incorporated herein by reference

57. The Plaintiff initiated a complaint against Miss Gruszczak verbally on the taped 911 call, verbally at the scene to responding police personnel, and in writing in his statement.

58. Trooper Herz arrested the Plaintiff based on the cross complaint made by Miss Gruszczak, but refused to take action against Miss Gruszczak based on the Plaintiff's complaint. Trooper Herz, Sergeant Tino-Tomessette and Sergeant Kostrzewa violated the plaintiffs equal protection rights by failing to take the complaint of the plaintiff specific to the criminal acts of Miss Gruszczak.

59. The sole information that Trooper Herz used to charge the Plaintiff under Sections 14-240 and 14-240a was the cross complaint statement of Miss Gruszczak. This statement was inconsistent with the facts that were presented. The Plaintiff is a sworn Police Officer that observed a dangerous situation and took proactive steps as a complainant to thwart this behavior by Miss Gruszczak. The Plaintiff's accounts of the incident were supported by his three calls to 911, his photos of the silver Nissan Altima that depict the exact situation as he described it, and his lack of an ulterior motive to involve himself in the situation to the extent he did.

60. Miss Gruszczak statements regarding her initial identification of the Plaintiff as a police officer and her account of the incident with at least two additional vehicles in front of hers shows that she gave false information during the investigation of this incident.

61. Trooper Herz failed to include any facts or circumstances in his report, other than a cross complaint from Miss Gruszczak, that support probable cause to arrest the Plaintiff on these charges. Trooper Herz had information available at the scene that showed Miss Gruszczak was not being truthful in her statement. Arresting the initial complainant based on a cross complaint from an accused person who knows the complainant wishes to pursue charges against them is in stark contrast with commonly accepted police practices.

62. Despite The Plaintiff initiating the complaint via his 911 call and providing a more credible account of more serious criminal violations, Trooper Herz refused to take action against Miss Gruszczak, violating the Plaintiff's right to equal protection under the fourteenth amendment.

63. By reason of his denial of Equal Protection, the plaintiff has lost wages, compensation, and has suffered embarrassment, humiliation, mental anguish, and loss of self-esteem.

## FIFTH CAUSE OF ACTION

*(Denial of Equal Protection Violation of the Fourteen Amendment of the United States Constitution 42 U.S.C., §1983 as to all Defendants)*

64. On May 30, 2012, the Connecticut State Police, Special Licensing and Firearms Unit revoked the Plaintiff's Special Police Powers and ordered him to surrender his identification card, number 1078 with no legal justification.

65. On May 30, 2012, Connecticut State Police Major Sarah Bruso drafted a letter to the Plaintiff indicating that his "Special Police Powers" authorized by Connecticut General Statute 29-18, were revoked effective immediately. It cites that the reason for the revocation was his involvement in an incident investigated by Troop H under case number 12-00309051.

66. Section 29-18 states that the Commissioner of Emergency Services and Public Protection may appoint one or more persons nominated by the administrative authority of any state buildings or lands including, but not limited to, state owned and managed housing facilities, to act as special policemen in such buildings and upon such lands. Each such special policeman shall be sworn and may arrest and present before a competent authority any person for any offense committed within his precinct.

67. None of The Plaintiff's actions or charges justify or authorize the revocation of his special police powers. The Plaintiff was charged with misdemeanor

and motor vehicle charges, given a misdemeanor summons, is not the subject of a protective or restraining order and has not been convicted of any charges.

68. On July 30, 2012, Counsel submitted a letter to Major Sarah Bruso requesting an explanation of the authority or basis for the revocation and demand that he surrender his identification card, number 1078. The correspondence stated that this revocation resulted in the Plaintiff's inability to work in his current position and requested that the State provide the procedure for appealing this decision.

69. On August 16, 2012, Major Bruso responded with a letter stating that neither statute nor regulation provides for an appeals process when the commissioner exercises his discretion to end such appointment.

70. The State's response provides no factual basis for the revocation of the Plaintiff's special police powers. At no time has the State explained how they came to the decision to revoke his special police powers or where their authority to take this action lies. They have not referenced any set standards that are used to determine what constitutes revocable actions or charges versus those that would allow someone to maintain their special police powers.

71. The State's response provides no due process right to appeal the decision or provide a body to hear the appeal. The response indicates that, despite the Plaintiff's inability to work, he can seek reinstatement if the charges are resolved in his favor. It is not explained what process would take place if some or all of the charges were to be resolved in his favor.

72. The State took punitive action against the Plaintiff that resulted in the loss of his ability to work in his current position. This action was not based on any

established standard; but rather an arbitrary decision made without proper procedure. The State refused to provide any substantive reasoning to the Plaintiff or Counsel. The State then denied the Plaintiff any organized, fair right to appeal this decision. The State's actions violated The Plaintiff's right to due process.

### SIXTH CAUSE OF ACTION

*(Violation of 42 U.S.C. §1983 and § 1988 as to the Defendant Connecticut State Police)*

73. Paragraphs 1 through 37 are incorporated herein by reference.

74. During all times relevant to this complaint, the defendant, CSP is incorporated under the laws of the State of Connecticut.

75. The defendant, CSP, failed to secure to the plaintiff, unlawfully deprived the plaintiff, or caused the plaintiff to be unlawfully deprived of rights secured by the United States Constitution and by 42 U.S.C. § 1981 and § 1983, et seq., in one or more of the following ways, in that it:

    a. Failed and/or refused to promulgate and enforce appropriate guidelines, regulations, policies, practices, or customs regarding arrest, seizures and the Fourth Amendment as it applies to law enforcement investigation, and proper investigation of criminal; and/or

    b. Failed or refused to adequately train CSP officers in the performance of their duties and conduct regarding arrest, seizure and proper methods to conduct investigations,

including arrest and seizures; and/or

c. Failed or refused to adequately supervise the CSP supervisors in the performance of their duties and regarding their conduct towards subordinate officers; and/or

d. Failed or refused to take appropriate investigatory, supervisory and/or disciplinary actions against members of the CSP who are defendants in this action regarding their negligent, reckless, malicious, deliberate, indifferent, intentional or unlawful conduct; and/or

e. Failed to properly train, monitor, supervise, investigate and/or discipline members of the CSP regarding the investigation of crimes, and law enforcement standards applicable to arrest and seizure; and/or

76. Such conduct and/or policies on the part of the defendant, CSP, constituted a continued, and continuing, moving force behind the violation of the civil rights of the plaintiff and the injuries he has suffered, as more fully and specifically described above.

## SEVENTH CAUSE OF ACTION

*(Intentional Infliction as to defendants Herz, Tino-Tomessette and Kostrzewa)*

77. Paragraphs 1 through 37 are incorporated herein by reference.

78. The plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1367 and Rule 18(a) of the Federal Rules of Civil Procedure to adjudicate claims arising out of the transactions set forth above, which violate the rights and duties established by the

18

common law of the State of Connecticut.

79. Each of the individual defendants intended to inflict severe emotional distress upon the Plaintiff, and knew, or should have known, that their acts and/or omissions as alleged herein would result in severe emotional distress to the plaintiff.

80. The acts and/or omissions of each of the individual defendants were extreme and outrageous.

81. As a direct and proximate result of said acts and/or omissions, the plaintiff suffered severe emotional distress.

82. The Plaintiff claims damages.

VII.   **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff claims judgment against the defendant as follows:

(1)   Money damages in the amount of Five Hundred Thousand Dollars ($500,000.);

(2)   Punitive damages as to defendants Herz, Tino-Tomessette, and Kastreza in their individual capacity;

(3)   Attorney's fees and costs as provided by 42 U.S.C. §§1983 and 1988, and other applicable law;

(4)   Such other relief in law or equity as the Court may deem appropriate;

(5)   A jury trial is requested.

Respectfully Submitted,
PLAINTIFF, MARK MINTO

By: /s/ Jill K. Levin
Jill K. Levin
Law Offices of Jill K. Levin, LLC
883 Farmington Avenue, P.O. Box 117
Berlin, CT  06037
(860) 356-7661
Federal Bar # CT28516