UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK MINTO, | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:14-CV-00747 (VLB) |
| | ) | |
| CONNECTICUT STATE POLICE, | ) | |
| MAJOR SARAH BRUSO, | ) | |
| SERGEANT CLAUDIA TINO- | ) | |
| TOMASSETT, | ) | |
| SERGEANT MICHAEL P. | ) | |
| KOSTERZEWA, AND | ) | |
| TROOPER MATTHEW HERZ, | ) | |
| DEFENDANTS. | ) | September 30, 2016 |

<u>Memorandum of Decision Granting Summary Judgment of Plaintiff's Claim for Intentional Infliction of Emotional Distress [Dkt. No. 25]</u>

Plaintiff Mark Minto ("Minto" or "Plaintiff") brought certain claims stemming from Minto's arrest and the seizure of his weapon, weapon permit, and special police powers, following an alteration with Jennifer Gruszczak.  After Defendant's Motion to Dismiss, Plaintiff's remaining claims are Count Two, alleging unlawful seizure of Plaintiff's firearm; Count Five, limited to alleging a procedural due process violation with regard to revocation of Plaintiff's special police powers and identification card; and Count Seven, alleging intentional infliction of emotional distress.[1]  Defendants Connecticut State Police, Major Sarah Brusco, Sergeant Claudia Tino-Tomassetti, Sergeant Michael P. Kostrzewa, and Trooper Matthew Herz ("Defendants") moved for summary judgment on

---

[1] The scope of Plaintiff's surviving claim under Count Five is outlined in the Memorandum of Decision on Defendant's Motion to Dismiss.  [Dkt. No. 22].

Plaintiff's Complaint Count Seven, Intentional Infliction of Emotional Distress

claim. For the reasons set forth below, Defendants' motion is GRANTED.

I.     Facts

Plaintiff brings a claim of intentional infliction of emotional distress against

Defendant Trooper Matthew Herz ("Herz"). [Dkt. No. 1 ("Complaint") at 18-19].

His claim stems from his arrest by Hertz on May 29, 2012 following a road rage

incident. Complaint at 3-7. Plaintiff cites exclusively to Defendants' summary

judgment exhibits in opposition to Defendants' motion for summary judgment,

referenced as "Exhibit 1" and "Exhibit 2."[2] The following facts are based on the

limited evidence available.

On May 29, 2012, Plaintiff was driving home on Route 9 when he observed

the vehicle in front of him "sporadically and repeatedly" apply its brakes,

causing Plaintiff to brake to avoid a rear-end collision. Ex. 2 at 22. Plaintiff

attempted to pass the vehicle illegally on the right, but the operator, Jennifer

Gruszczak, increased speed, preventing him from passing. *Id*. at 22. At that

point, Plaintiff observed a young child in the rear passenger seat of the other

vehicle, which continued moving in an erratic manner, increasing and decreasing

speeds and pulling alongside of a box truck traveling in the right lane to prevent

the Plaintiff from passing illegally on the right. *Id*. at 22. The operator of the

other vehicle made an obscene gesture at the Plaintiff through her sunroof. Ex. 1

at 3. After observing this gesture, the Plaintiff concluded the driver was under

the influence of drugs and/or alcohol and decided to phone 911 to inform police

---

[2] Dkt. No. 25 (Motion for Summary Judgment), Exhibits 1 (incident report) and 2 (transcript of the
deposition of Plaintiff).

of her actions. *Id*. at 3. Plaintiff called 911 several times, but the calls were dropped. Ex. 2 at 23. Plaintiff called 911 a final time and made contact. *Id*. at 23.

While the 911 operator was on the telephone, Plaintiff continued to pursue the other vehicle, which exited the highway and proceeded to a condominium complex where the driver parked and exited her vehicle. *Id*. at 23. Plaintiff parked his vehicle near the other vehicle and exited his vehicle in order relay to the 911 operator his location and the license plate number of the other vehicle. *Id*. at 23. While he was speaking to the 911 operator, the other driver confronted Plaintiff and asked him why he was following her so closely. *Id*. at 24. The 911 operator Plaintiff not to engage the other driver, to return to his vehicle and wait for police to arrive. *Id*. at 24. Plaintiff returned to his vehicle and the other driver returned to her vehicle and drove away. *Id*. at 24.

Local law enforcement officers soon arrived on the scene. *Id*. at 24. Two State Troopers arrived shortly thereafter, including Defendant Herz. *Id*. at 24. The State Troopers summoned Plaintiff's supervisor, Sergeant John Rumley to respond to the scene, and he did so as well. *Id*. at 25. Defendant Herz took written statements from both the Plaintiff and the driver of the other vehicle. Ex. 1 at 2-3. Defendant Herz observed that Plaintiff was wearing a police uniform and badge. *Id*. at 2. He also learned that the Plaintiff was a police officer for the Department of Mental Health and Addiction Services stationed at Connecticut Valley Hospital with police powers exercisable on the property of the Hospital and that Plaintiff was en route from work to his home when the incident occurred. *Id*. at 2. After questioning and taking statements from both the Plaintiff and the other

driver, the Defendant cited the Plaintiff for traffic violations, charged him with several criminal offenses, seized his firearm, and took him into custody. *Id.* at 3-4; Ex. 2 at 54-55.  In particular, the Defendant issued a misdemeanor summons to the Plaintiff for Failing to Drive a Reasonable Distance Apart, Intent to Harass or Intimidate, Criminal Impersonation of a Police Officer, and Breach of the Peace in the Second Degree. *Id.* at 1.  Defendant Herz did not cite or charge the other driver with any violations or offenses. Ex. 1 at 3-4; Ex. 2 at 54.

Subsequent to the incident, Plaintiff was placed on unpaid leave.  Ex. 2 at 60 (unpaid leave).  In the weeks following the incident, Plaintiff went to therapy three to four times, once per week, for 40 minutes to an hour each time.  Ex. 2 at 30:2-32:18; 57:4-58:1.  Defendant was not diagnosed with severe emotional distress, a sleep disorder, a mental disorder, or any other diagnosis as a result of the incident. *Id.* at 30:2-32:18; 57:4-58:1.

Prior to May 29, 2012, Plaintiff and Defendant Herz had never met. *Id.* at 51:18-20.  Plaintiff does not claim that the Defendant said anything on May 29, 2012 suggestive of personal animus. *See generally, Id.*

Defendant Herz now seeks summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

II.    Legal Standard

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the

reasons for granting or denying the motion."  A party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. Rule Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. Rule Civ. P. 56(c)(3).  If a party fails to support an assertion of fact with admissible evidence the court may "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it."  Fed. Rule Civ. P. 56(e)(3).

The party moving for summary judgment bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* at 106 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (2d Cir. 2010); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted). In addition, "[a] party opposing

summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (1986).  More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 248.  "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–588 (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading."  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 884 (1990).

The Local Rules for the District of Connecticut require a party moving for summary judgment to attach a "Local Rule 56(a)1 Statement" to the motion.  D. Conn. L. Civ. R. 56(a)1.  A Local Rule 56(a)1 Statement should "set [ ] forth in

separately numbered paragraphs . . . a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." *Id*. Critically, each paragraph must contain specific citation(s) "to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." *Id*.  In responding to the motion, the non-movant must also submit a "Local Rule 56(a)2 Statement" admitting or denying the facts in the movant's Local Rule 56(a)1 Statement and providing a list of disputed material facts with specific citations to the supporting evidence.  D. Conn. L. Civ. R. 56(a)2.

The Plaintiff fails to comply with the rules by citing to admissible evidence and instead cites to the complaint in his memorandum in opposition to summary judgment, and to what appear to be Defendants' 56(a)(1) exhibits in support of his Rule 56(a)(2) statement.  Plaintiff attaches no exhibits to his Rule 56(a)(2) statement.  "[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the court deeming certain facts that are supported by the evidence admitted in accordance with rule 56(a)(1) . . ." D. Conn. L. Civ. R. 56(a)(3).   The Second Circuit has indicated that district courts have discretion in applying their local court rules. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation omitted); *see also Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) (affirming a district court's denial of summary judgment based on failure to comply with court's local rules).

In this case, the Court can fairly and completely adjudicate summary judgment in this matter without full compliance with the District of Connecticut's

Local Rules.  Where parties dispute *what facts were known* to police officers at the time an individual was arrested, resolution is for the jury; where, as here, the parties do not dispute what facts were known to Defendants but dispute whether those facts support probable cause, the disposition is a matter of law.  *Walczyk v. Rio,* 496 F.3d 139, 157 (2d Cir.2007) ("It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court.").  Because the material facts are not in dispute, the court can decide this motion.

III.    Analysis

To withstand summary judgment, the Plaintiff bears the burden of establishing a triable issue of fact as to the four elements of his intentional infliction of emotional distress claim.  He must raise a genuine issue of material fact as to whether (1) the Defendant intended to inflict emotional distress, or that the Defendant knew or should have known that emotional distress was a likely result of his conduct; (2) that the Defendant's conduct was extreme and outrageous; (3) that the Defendant's conduct was the cause of the Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe.  *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 133 (1986).

Where an officer has probable cause for an arrest, a claim for intentional infliction of emotional distress is unsustainable unless the Plaintiff produces some evidence of animus.  *See Winter v. Northrop,* No. 3:06cv216 (PCD), 2008 WL 410428, at *7 (D. Conn. Feb. 12, 2008) (where plaintiff brought false arrest and IIED claims, officer's "routine participation in [the p]laintiff's arrests, based upon

**8**

probable cause, . . . does not constitute intentional infliction of emotional distress"); *Garcia v. Gasparri,* 193 F.Supp.2d 445, 454 (D. Conn. 2002) ("Because the Court finds that Gasparri had probable cause to arrest Garcia and that his constitutional right was therefore not violated, Gasparri's conduct cannot be found to be 'extreme and outrageous' as a matter of law.").  The Court first addresses whether probable cause existed for Plaintiff's arrest, and then turns to whether Plaintiff has otherwise stated a claim for intentional infliction of emotional distress.

      a.  Probable cause to arrest Plaintiff

Under both federal and Connecticut law, the totality of circumstances test for determining whether probable cause exists for a warrantless arrest simply allows a court to consider all the relevant evidence; it does not increase the level of evidence necessary to support a determination of probable cause.  *State v. Velasco*, 248 Conn. 183, 189–90 (Conn. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983)); *see also State v. Johnson*, 286 Conn. 427 (Conn. 2008); *State v. Barton*, 219 Conn. 529, 544–45 (Conn. 1991).  In evaluating these matters, we consider the facts available to the officer at the time of the arrest.  *Lowth v. Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996).

The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction, but it must constitute more than rumor, suspicion, or even a strong reason to suspect. U.S. Const. Amend. 4; *see also U.S. v. McDow*, No. S2 15 CR. 233 (PGG), 2016 WL 3636665 (S.D.N.Y. June 29, 2016).  The Second Circuit has observed that "[o]nce a

police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 12 (2d Cir. 1997).   A police officer is entitled to take into consideration all of the facts presented and reach his own conclusion. *Id.*  An officer's "failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Id.; see also, Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir.2006). Even if Plaintiff had disputed the witnesses' version at the time of the incident, conflicting versions alone do not defeat probable cause. *See Curley v. Village of Suffern,* 268 F.3d 35, 70 (2d Cir. 2001).

Here, both operators were present throughout the altercation and each gave the Defendant their version of events.  There were no other witnesses available to the Defendant and no basis for further investigation.  The Plaintiff admitted that there was a road rage incident and the Plaintiff was left to determine who was at fault. The only other possible witness to the events was the 911 operator.  The Plaintiff offers no evidence that the 911 operator substantiated his claim.  The Plaintiff reported that the other operator had a small child in her vehicle.

Based upon the totality of the circumstances, the Defendant could have reasonably concluded that the Plaintiff and not the other driver initiated and escalated the incident.  First, the other driver had a young child in her vehicle. Moreover, Plaintiff pursued the other vehicle.  He followed the other vehicle off the highway to a residential complex and parked in close proximity to the vehicle.

He then exited his vehicle ostensibly to record the license plate of the other vehicle.  However, he did so in plain view of the other driver rather than waiting until she entered a building.  He then engaged in a verbal altercation with the other driver who drove away and did not return until after police arrived on the scene.  The Court finds that the Defendant had probable cause to arrest the Plaintiff.

### b.  Plaintiff's Intentional Infliction of Emotional Distress Claim

In order for conduct to be extreme and outrageous under the first element of an IIED claim, the conduct must "exceed[] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Muniz v. Kravis,* 59 Conn. App. 704, 708, 757 A.2d 1207 (2000).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Bd. of Ed. of Stonington,* 254 Conn. 205, 210-11 (2000).  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.  Only where reasonable minds disagree does it become an issue for the jury."  *Id.* at 210 (citations omitted).

The Plaintiff argues that "[w]here one police officer arrests another police officer for impersonation of a police officer, amongst other things, the only reasonable and logical reaction could be: Outrageous!"  The court disagrees on a number of bases.  The Plaintiff had no power to and was not acting in the

capacity of a police officer during the events in question.  The Plaintiff was a special police officer with special police powers only on the campus of CVH. Plaintiff had no police powers on the public highways and streets nor in the parking lot of a private residential development.  A police officer is due no greater deference than any other citizen, and his or her word does not count for any more or less than that of any other citizen simply because of his profession, especially when he is not acting solely as a police officer and has a personal interest in the matter.  *Clack v. Torre*, 3:10-cv-1905, 2014 WL 1050792, *8 (D. Conn. Mar. 17, 2014) ("A police officer may rely upon the statements of victims and witnesses to determine the existence of probable cause for the arrest, regardless of the ultimate accurateness or truthfulness of the statements"); *Garcia*, 193 F. Supp. 2d at 453-54 (citing *King v. Cablevision Sys. of S. Conn. Ltd. P'ship*, No. CV 940135727S, 1998 WL 556162, at *6 (Conn. Super. Aug. 24, 1998) (stating "law enforcement officers must rely on statements of victims of crime in order to perform their job," and that even if statements relied upon do not rise to probable cause for an arrest, "[i]nadequate probable cause to bring criminal charges does not and should not connote extreme and outrageous behavior"); *Moreno v. New Haven Dept. of Police Serv.,* 604 F. Supp. 2d 364, 376 (D. Conn. 2008) (finding a police officer who had probable cause to make an arrest based on witness statements did not act "beyond all bounds of decency" supporting an intentional infliction of emotional distress claim); *see generally, Goldberg v. Glastonbury*, 453 F. App'x 40 (2d Cir. 2011) (an officer may assess the totality of the circumstances when deciding whether there is probable cause to make an arrest).

Plaintiff also indicated that Herz's demeanor, conduct and manner of approaching the scene indicated his intent to inflict emotional distress upon Plaintiff because he was biased.  Specifically, the Plaintiff asserts that Herz had prejudged the situation upon arrival, that he did not perceive the Plaintiff as an officer who could give a fair detail of what happened and that he could not be fair. 56(a)(1) Statement, Ex. 2 (Deposition of Plaintiff) at 53:25-54:10 ("How was he biased, in your opinion?  A. He made up his mind what he was going to do before he heard my statement.  Q. What do you base that on?  A. . . . "[H]e said he's not going to make – arrest the lady for anything.")  Plaintiff provides no factual support for this conclusion, other than to repeat that Defendants arrested Plaintiff.  *Id.* at 55:19-55:6 ("Q.  How was he unfair?  A. Because he took a stance before he even looked at the facts.  Q. And what did you base that on?  A. On his report, on the arrest.  . . . My statement of facts, what happened that day, he didn't take into consideration.  Q. And you base that on the fact that he arrested you and not the other individual . . . ?  A. That's correct.").  These nebulous assertions are insufficient to establish animus.

Plaintiff does, however, state that Herz made a hand gesture that Mr. Minto perceived as being inappropriate and unprofessional and which could be attributed to saying "Hell with you."  Mr. Minto characterizes this behavior variously as both dismissive and threatening, but he does not describe the gesture.  56(a)(1) Statement, Ex. 2 at 50:4-16.  Bad manners and insults do not rise to the level of extreme and outrageous conduct.  *Appleton v. Bd. of Ed. of Southington*, 254 Conn. 205, 210 (Conn. 2000).  The court cannot conclude that a

dismissive gesture is indicative of animus.  A dismissive gesture is not indicative of animus.

Since the summary judgment record shows as a matter of law that Defendants' actions were lawfully taken with probable cause, and Plaintiff proffers no evidence that Defendants effectuated the otherwise lawful arrest or prosecution unlawfully, there is no evidence on which a reasonable jury could conclude that Defendants' conduct was "beyond all bounds of decency" or is "to be regarded as ... utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 210-11.

Because the court has found that the arrest of the Plaintiff was not extreme and outrageous as a matter of law, it need not consider the other elements.  That having been said, the Plaintiff claims, and the Defendant denies, that the Plaintiff saw a psychologist on four occasions under his employer's employee assistance program as the basis for the severity of his distress.  The Plaintiff also alleges, and the Defendant contests, that Plaintiff experienced symptoms consistent with distress.  Plaintiff cites only to his own deposition testimony in support of these claims:

> Q. Have you ever [been] treated [by] a psychiatrist as a result of the
> incident that happened?
> A. I went to EAP.
> Q. When did you go to EAP?
> A. I don't know the exact date, but it was . . . May of 2012, I believe.
> Q. Did you meet with a psychiatrist or a psychologist?
> A. Psychologist, I believe she is.
> Q. What's her name?
> A. I don't have that information. . . .
> Q. How many times did you meet with her?
> A. I'd say approximately four times, three or four times; maybe more,
> I'm not sure.

Q. How frequently would you meet with her? . . .
A. Weekly.
Q. How long were your sessions?
A. I'm going to guess 40 minutes, 30 minutes or 40 minutes – no.
   Probably 40 minutes to an hour.
. . .

Q. Were you prescribed any medication as a result of this incident?
A. No.
Q. You indicated that you went to EAP.  Did you seek any other
   counseling services?
A. No.
Q. Did you go to your regular doctor as a result of this incident?
A. I have, yes.
Q. And what was your complaint?
A. Not sleeping regularly.
Q. Anything else?
A. Just sleeping.  I can't recall anything else.
Q. Were you offered treatment?
A. I'm supposed to take a sleep apnea test; I have not done it yet.
Q. Do you still have issues with sleeping?
A. I do.
Q. Have you ever been in mental health treatment?
A. No.
Q. Do you have any mental health diagnosis?
A. No. . . .
Q. But you've never been diagnosed as having a sleep disorder?
A. No.
. . .

Q. Was your emotional distress severe?
A. Yes.
Q. What was severe about it?
A. The impact it had on my body, my heart, stress.
Q. What was the impact on your body?
A. A lot of stress, a lot of strain, weariness, tired, unable to function,
   worrying, constant worrying about feeding my family.  I mean, a lot
   of things.
Q. Was that severe stress ever professionally diagnosed?
A. No.

**Ex. 2 at 30:2-32:18; 57:4-58:1.**

Plaintiff's own characterization of his condition does not suffice to fend off

summary judgment.  In order to prevail on a claim for noneconomic damages

under Connecticut law, a person need not seek medical treatment or be diagnosed with a mental ailment. *Patrolmen's Benevolent Assoc. of City of N.Y. v. City of N.Y.*, 310 F.3d 43, 55 (2d Cir. 2002) ("Evidence that a plaintiff has sought medical treatment for the emotional injury, while helpful, is not required."); *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 215 (D. Conn. 2013) (same). However, a plaintiff must offer more than his or her own statements that he or she suffered emotional distress. *Id.* at 55 (while evidence of medical treatment is not required, "a plaintiff's testimony of emotional injury must be substantiated by other evidence"); *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 2016, 229 (D. Conn. 2014) (dismissing claims for intentional infliction of emotional distress where plaintiff "failed to allege any facts to support the severity of their distress such as medical treatment or the testimony of family members' or friends' observations of behavior manifesting mental distress of a very serious kind"); *Neclerio*, 983 F. Supp. 2d at 215 (finding personal testimony of emotional distress insufficient to support claim for emotional damages); *Rinaldi v. Laird*, 3:14-cv-091, 2016 WIL 4179837, *8 (D. Conn. Aug. 5, 2016) (same). As the Plaintiff offers no corroboration for his claim of emotional distress other than four therapy visits, Plaintiff has failed to raise a triable issue of fact as to his claim of extreme emotional distress.

### c. Plaintiff's Unlawful Seizure of Firearm Claim

Plaintiff also alleges, in count two of his Complaint, that Defendant "seized the Plaintiff's firearm with no legal basis for the seizure in violation of [the] Fourth Amendment to the United States Constitution. The Connecticut State Police then

refused to return the firearm to the Plaintiff, or a suitable designee of the Plaintiff."  Complaint at 10.

A search leading to discovery of a weapon is lawful even in the absence of a warrant where "a person with authority to do so has freely consented to the search."  *State v. Jones*, 193 Conn. 70, 79 (Conn. 1984).  Once a weapon is discovered, law enforcement may seize it incident to a lawful arrest.  *State v. Trine*, 236 Conn. 216, 235-36 (Conn. 1996); *see also* Conn. State Constitution, Article first, § 7 ("The people shall be secure in their persons, houses, papers, and possessions from unreasonable searches or seizures[.]").  Seizure is alternatively lawful if the officer seizes the weapon to protect law enforcement or bystanders' safety, under the "exigent circumstances" doctrine.  *State v. Gant*, 231 Conn. 43, 66-67 (Conn. 1994); *State v. Aviles*, 277 Conn. 281, 297 (Conn. 2006).  To invoke the exigent circumstances doctrine, circumstances must make "the procurement of a search warrant unreasonable in light of the dangers involved . . . [where] it may be thought that, if the police delay while a warrant is obtained, the object may cause or be used to cause harm."  *Id*. at 67.  As the Court has found that Officer Herz could have reasonably concluded that Minto was the aggressor, and thus there was probable cause for the arrest, under the totality of the circumstances exigent circumstances existed warranting seizure of Minto's firearm.

Once a weapon is lawfully seized, the Board of Firearms Permit Examiners ("Firearms Board") may revoke the owner's firearm permit "upon the commissioner's own investigation or upon the request of any law enforcement

agency."  Conn. Gen. Stat. § 29-32(b); *see also Kuck v. Danaher*, 822 F. Supp. 2d
109, 124-25 (D. Conn. 2011) (discussing right to revoke a firearm permit under
Conn. Gen. Stat. § 29-32(b) where the permit holder is not suitable to hold a
permit).  The Court has already dismissed Plaintiff's claim that revocation of his
firearm permit was unlawful, validating the decision to seize it in the first
instance.  [Dkt. No. 22.]

Here, Plaintiff testified at his deposition that he consented for Officer Herz
to search the back of his vehicle for Plaintiff's weapon, rendering lawful the
search resulting in discovery of the weapon.  Ex. 2 at 25.  Plaintiff also testified he
was arrested at the scene.  *Id.* at 54-55.  Additionally, the incident report
submitted in support of Defendants' summary judgment motion indicates Officer
Herz confiscated Plaintiff's weapon "for safety reasons," and that the other driver
stated that Plaintiff got out of his vehicle and yelled at her after following her off
the highway and to her home.  *Id.* at 2-3.  Plaintiff has submitted no evidence
suggesting he did not act aggressively toward the other driver, or that Officer
Herz's safety concern was unreasonable, particularly since Plaintiff was not
forcibly removed from the scene.  *Id.* at 4 (establishing Plaintiff was not arrested).

There is no question of fact that Officer Herz confiscated Plaintiff's firearm
lawfully, incident to an arrest and out of concern for his and bystanders' safety.
Nor is there any dispute remaining regarding whether Defendants have lawfully
retained Plaintiff's firearm, as this Court determined at the motion to dismiss
stage that Plaintiff's firearm permit was lawfully revoked.  The Court accordingly

*sua sponte* grants summary judgment on count two of Plaintiff's complaint to conform to the decisions rendered in the other orders entered in this case.[3]

I.    Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment on Count Seven of Plaintiff's Amended Complaint, and grants summary judgment on Count Two *sua sponte*.  The case will proceed only as to Count Five, and only as a procedural due process claim as outlined in the Court's previous Memorandum of Decision on Defendant's Motion to Dismiss [Dkt. No. 22].

SO ORDERED, this 30th day of September, 2016, Hartford, Connecticut

_____/s/_____

Vanessa L. Bryant,

United States District Judge

---

[3] A Court may grant summary judgment against the moving party *sua sponte* where "all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court" and the procedures set out in Federal Rule of Civil Procedure 56 for notice and opportunity to defend are either followed or "would not alter the outcome."  *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139-40 (2d Cir. 2000) (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)).

19